FILED
2017 Aug-25  PM 01:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
7/28/2017 3:17 PM
25-CV-2017-900273.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

DOCUMENT 2

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| THE UTILITIES BOARD OF THE CITY OF CULLMAN, ALABAMA, | ) ) ) ) |
|     Plaintiff, | ) ) |
| v. | ) )   Civil Action No. _____ |
| CH2M HILL ENGINEERS, INC.; ASI CONSTRUCTORS, INC.; and WESTERN SURETY COMPANY, | ) ) ) ) ) |
|     Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELATED RELIEF

For its Complaint, The Utilities Board Of The City Of Cullman, Alabama (the "Cullman Utilities Board") states the following:

### Facts Material To Claims Asserted And Relief Requested

1.      This action arises out of the design and construction of a dam (the "Duck River Dam") in Cullman County, Alabama for the Cullman Utilities Board.

2.      The Cullman Utilities Board is a public utility that serves as a regional supplier of drinking water for the City of Cullman, Alabama and surrounding water utilities.  The purpose of the Duck River Dam is to create an approximately 640-acre reservoir that will serve as a raw water source.  The dam includes a center spillway section constructed primarily of roller compacted concrete, flanked on

{B0976144 1}

both sides by earth core/rock fill embankments. The concrete spillway section incorporates an internal concrete corridor, known as the "Gallery," that runs the length of the spillway (perpendicular to the riverbed) and into the west embankment.

3. The Cullman Utilities Board engaged and contracted with defendant CH2M HILL Engineers, Inc. ("CH2M") to plan and design the Duck River Dam and related ancillary structures, such as an "Intake Tower" in the reservoir to collect raw water for transmission to a pumping station and water treatment facility and a "Stilling Basin" on the downstream side of the dam to dissipate the force of water flowing over the spillway before the water enters the downstream riverbed.

4. In addition to planning and designing the Duck River Dam and related ancillary work, CH2M's engagement and contract with the Cullman Utility Board included preparing appropriate contract documents for a competitively bid contract to construct the dam; soliciting bids from construction contractors; managing of the bidding process (including responses to bidder questions and issuing addenda); administering the construction contract (prepared by CH2M) during construction; and providing an on-site construction manager and inspectors during construction.

5. The construction contract documents that CH2M prepared conferred upon CH2M (designated as the "Engineer" in the construction contract) extensive

DOCUMENT 2

authority and responsibility for administering the contract, including authority and responsibility for: making critical determinations, such as whether the construction contractor's work conformed to the requirements of the contract; responding to requests by the construction contractor for information, determinations, or interpretations concerning requirements of CH2M's design plans and specifications; reviewing the construction contractor's payment applications and making recommendations concerning payment; and determining whether the construction contractor has achieved "Substantial Completion" of the construction contractor's work.

6.     With respect to providing a full-time on-site construction manager and inspectors during construction, the Cullman Utility Board's contract with CH2M provides, *inter alia*:

> The ENGINEER will provide a construction manager and conduct on-site observations of the Contractor's work for the purposes of determining if the work conforms to the contract for construction and that the integrity of the design concept as reflected in the contract for construction has been implemented and preserved by the Contractor.

CH2M agreed and contracted to provide, and the Cullman Utilities Board paid CH2M to provide, full-time on-site construction management, contract administration, and inspection services.

DOCUMENT 2

7.     Under the construction contract documents, which CH2M prepared, CH2M had the authority to reject deficient work by the construction contractor. For example, Paragraph 9.05 of the General Conditions of the construction contract provides:

> A.     Engineer will have authority to reject Work which Engineer believes to be defective or that Engineer believes will not produce a completed Project that conforms to the Contract Documents or that will prejudice the integrity of the design concept of the completed Project as a functioning whole as indicated by the Contract Documents.

8.     With respect to CH2M's review and recommendations concerning the construction contractor's applications for payment, the construction contract documents (which CH2M prepared) provide:

> 14.02 B. *Review Of Applications*
>
> * * *
>
> 2.   Engineer's recommendation of any payment requested in an Application for Payment will constitute a representation by Engineer to Owner, based on Engineer's observations on the Site of the executed Work as an experienced and qualified design professional and on Engineer's review of the Application for Payment and the accompanying data and schedules, that to the best of Engineer's knowledge, information and belief:
>
> a.     the Work has progressed to the point indicated;
>
> b.     the quality of the Work is generally in accordance with the Contract Documents (subject to an evaluation of the Work as a functioning whole prior to or upon Substantial Completion, to the results of any subsequent tests called for in the Contract Documents, . . .  and to any other qualifications stated in the recommendation); . . .

DOCUMENT 2

9.     CH2M served as the Cullman Utilities Board's principal advisor and consultant for the planning, design, bidding, scheduling, contracting, and construction of the Duck River Dam and its related ancillary work, and CH2M cultivated and established a relationship of trust and confidence with the Cullman Utilities Board.  The Cullman Utilities Board trusted and relied upon CH2M's experience, expertise, and integrity, and CH2M's assurances that CH2M was advancing and safeguarding the interests and objectives of the Cullman Utilities Board.

10.     Defendant ASI Constructors, Inc. ("ASI") submitted the lowest bid for the contract to construct the Duck River Dam and related ancillary work (*e.g.* the Intake Tower), and based on CH2M's recommendation, the Cullman Utilities Board entered into a written construction contract with ASI (using forms prepared by CH2M) dated May 30, 2014 (the "ASI Construction Contract").

11.     The ASI Construction Contract required ASI to furnish a performance bond "as security for faithful performance ... of all of Contractor's obligations under the Contract Documents."   On May 30, 2014, ASI, as principal, and defendant Western Surety Company ("Western Surety"), as surety, issued to the Cullman Utilities Board, as obligee, a performance bond in which Western Surety and ASI agreed, "jointly and severally, [to] bind themselves, their heirs, executors,

administrators, successors, and assigns Owner for the performance of the Contract."

12. Construction began in June of 2014. The Cullman Utilities Board paid CH2M millions of dollars to perform extensive construction contract management and administration services for, and inspections of, ASI's work, including providing a full-time on-site construction manager and full-time inspectors. The Cullman Utilities Board relied upon CH2M's inspections, determinations, advice, recommendations, and representations during construction, including CH2M's recommendations that the Cullman Utilities Board continue to make payments to ASI because ASI's work complied with the requirements of CH2M's design documents. CH2M's charges for its services during construction substantially exceeded CH2M's projections and the "Not To Exceed Amount" in its agreements with the Cullman Utilities Board.

13. On December 25, 2015, when much of the Duck River Dam's water retention structure was nearing its final height, a flood caused an unusually rapid filling of the reservoir upstream of the dam. At that time, a far greater than anticipated flow of water from the reservoir into and through the concrete portion of the dam was first observed ("Excessive Leakage"). Much of the Excessive Leakage flows into and through the Gallery.

DOCUMENT 2

{B0976344.1}                                     6

14.    Following the flood, ASI began sending correspondence with notices of claims or potential claims for additional compensation, asserting, *inter alia*, that the Excessive Leakage impaired, and to some extent prevented, completion of ASI's work under the ASI Construction Contract and made performance of that work more expensive.  ASI also asserted that "inherent limitations of [CH2M's] design" resulted in a continuing impoundment of the reservoir that impeded ASI's work and that post-flood failures by CH2M to provide required "technical direction" and to timely perform required construction contract administration functions caused ASI to incur additional costs, for which ASI asserted claims against the Cullman Utilities Board.  ASI further asserted that post-flood failures of dam components, including brackets in the Intake Tower and a permanent plug at the designed outlet structure through the base of the dam's concrete spillway, resulted from deficient design by CH2M and/or deficient "technical direction" by CH2M, and ASI again asserted claims against the Cullman Utilities Board for alleged additional costs associated with the post-flood failures.

15.    CH2M responded to ASI's correspondence and claims notices by asserting that the conditions about which ASI complained were generally self-inflicted by ASI's discretionary decisions, by ASI's failures to follow the contract documents, and by ASI-caused delays in completing elements of ASI's work which, if timely completed, would have minimized the impact of the flood. In a

May 13, 2016, letter that included CH2M's "Findings" and "Conclusions," CH2M

asserted, *inter alia*:

> CH2M never received a final detailed diversion plan submittal from ASI that was stamped by an Alabama PE per specification 01 50 00 section 3.08.B.5, and ASI never installed the two 18" pipes that were in their diversion plan and intended for primary diversion. It should be noted that when ASI left the project site for the Christmas Holiday on December 23, 2015, there were a number of key activities that were several months behind schedule.

> * * *

> When the water rapidly rose on December 25 and 26, 2015 due to heavy rains, the water in the reservoir became impounded, and remains so to this date. This is because ASI did not complete the intake tower, the outlet pipe, chamber, and the stilling basin, and the fact that no emergency diversion features were installed to allow for drainage of the reservoir. To make matters worse, because ASI had not completed work in the Intake Tower and none of the gates were operational, the 48" pipe to the pump station could not be continuously opened as intended to allow water to flow through it and help divert water after the reservoir became impounded.

> * * *

> The diversion plan that ASI chose to implement, along with ASI's chosen sequence of construction and self-inflicted delays, are the root cause of the water that continues to be impounded in the reservoir. Because CH2M did not design or create the implemented diversion plan and because the Intake Tower and Outlet Chamber were not completely functional when the reservoir was impounded as intended in the design documents, CH2M was not in a position to provide technical direction on how to drain the reservoir.

> * * *

> ASI knew that flooding and subsequent impoundment during the rainy season was a high probability risk and made a conscious decision not to implement mitigation strategies (even though several were suggested in the contract documents) that would prevent the need for construction with a nearly fully impounded reservoir. ASI also had adequate time to complete the Intake Tower, Stilling Basin and other critical elements of the project during the dry season and failed by its own actions to do so.

* * *

ASI's letter 1407-090 dated March 3, 2016 indicated that design limitation makes lowering the reservoir difficult to impossible and that the capacity to release water is limited to a single 48" diameter pipe with restricted inlet and outlet configurations. Contrary to ASI's statements, the contract documents provide a suggested diversion plan that if followed would have mitigated and eventually drained the impounded reservoir very quickly. . . The design did not limit ASI's ability to drain the reservoir once it was impounded; instead, ASI's own diversion plan and their own self-imposed delays were the root causes of the construction constraints created by the impoundment.

ASI wishes to focus on the size of the storm. In letter 1407-081, ASI stated that "ASI designed and submitted a Diversion and Care of Water Plan that satisfied the requirements set forth in the above cited technical requirements of the Contract." They then stated in the same letter that their diversion plan "provided adequate capacity to route a 10-year flood flow of approximately 6,000 CFS through the Work without substantial damage to the Work..." As previously stated, while ASI's plan may have been able to pass 6,000 CFS of flow, it would not do this until it reached elevation 718 feet and it then allowed water to remain impounded, which is not what was suggested and recommended by the Engineer in the contract documents to work in the dry. Moreover, ASI did not have this emergency diversion plan in place at the time the flood occurred that would allow them to lower the reservoir and prevent impoundment. The bottom line is, even if the storm was less severe than the one that occurred, any water from such a storm and the normal rains that occurred over the past several months would have collected behind the dam and water would have remained impounded due to ASI's own self-inflicted delays and their decision to implement the diversion plan they did.

ASI responded with correspondence taking issue with CH2M's Findings and Conclusions, and renewing ASI's prior assertions about "inherent limitations of [CH2M's] design" and about CH2M's failures to provide "technical direction" and to timely perform construction contract administration functions.

16.    On March 16, 2016, the Cullman Utilities Board notified CH2M in writing that if and to the extent ASI's assertions about deficient design, deficient contract documents, and failures by CH2M to provide necessary technical directions and to timely perform required contract administration functions, proved to be valid, then the Cullman Utilities Board would have to look to CH2M to recover any resulting costs, expenses, or damages incurred by or imposed upon the Cullman Utilities Board.

17.    In the spring of 2016, CH2M designed an extensive system of drainage pipes and valves to divert (but not stop) the flow of some of the Excessive Leakage. The Cullman Utilities Board had to pay CH2M for this design work and also paid ASI over $370,000 to install the system CH2M designed, reserving the Cullman Utilities Board's rights against both ASI and CH2M to recover all amounts paid by the Cullman Utilities Board.

18.    On June 21, 2016, CH2M issued written initial findings and recommendations concerning the Excessive Leakage (the "Engineer's Initial Findings And Recommendations"). In the Engineer's Initial Findings And Recommendations, CH2M stated for the first time its finding and determination that the Excessive Leakage resulted from "the [deficient] quality of construction" by ASI and because ASI "ignored CH2M's instructions."

10

19.     On July 11, 2016, through a letter signed by an ASI-employed professional engineer licensed in Alabama, ASI disputed in writing CH2M's finding and determination that the Excessive Leakage was attributable to faulty construction by ASI, and asserted instead that the Excessive Leakage resulted from faulty design and faulty construction phase services by CH2M. In its July 11, 2016, response, ASI also asserted that CH2M had failed to provide any design details or direction concerning a specific element of ASI's work that CH2M identified as deficient in CH2M's June 21, 2016, Engineer's Initial Findings And Recommendations and that CH2M had not issued any Non-Conformance Notices for the work in question, even though CH2M had not hesitated to issue Non-Conformance Notices for other elements of ASI's work that CH2M had deemed to be defective.

20.     Although CH2M had affirmative obligations and duties to the Cullman Utilities Board to continuously monitor and inspect ASI's work as it was being performed, as well as to provide continuous construction management and contract administration during ASI's performance, and CH2M is responsible and liable to the Cullman Utilities Board for failures to perform those duties and obligations with the required diligence, skill, and care, such failures by CH2M cannot relieve or excuse ASI from ASI's obligations to the Cullman Utilities Board. The ASI Construction Contract provides, *inter alia*:

6.19    Contractor's General Warranty and Guarantee

A.  Contractor warrants and guarantees to Owner that all Work will be in accordance with the Contract Documents and will not be defective.

\* \* \*

C.  Contractor's obligation to perform and complete the Work in accordance with the Contract Documents shall be absolute. None of the following will constitute an acceptance of Work that is not in accordance with the Contract Documents or a release of Contractor's obligation to perform the Work in accordance with the Contract Documents.

1.  observation by Engineer;

2.  recommendation by Engineer or payment by Owner of any progress or final payment;

3.  the issuance of a certificate of Substantial Completion by Engineer or any payment related thereto by Owner;

4.  use or occupancy of the Work or any part thereof by Owner;

5.  any review and approval of a Shop Drawing or Sample submittal or the issuance of a notice of acceptability by Engineer;

6.  any inspection, test, or approval by others; or

7.  any correction of defective Work by Owner.

21.    On July 19, 2016, the Cullman Utilities Board delivered a written Notice Of Claim to ASI based on the Engineer's Initial Findings And Recommendations and also on the costs, expenses, and damages that have been and will be incurred by the Cullman Utilities Board as a result of the Excessive Leakage and related consequences and deficiencies.

22.    On July 22, 2016, the Cullman Utilities Board notified CH2M in writing that if and to the extent ASI's assertions concerning CH2M's fault and responsibility for the Excessive Leakage proved to be valid, then the Cullman

{B0976344.1}                    12

Utilities Board would look to CH2M to recover the Cullman Utility Board's costs, expenses, and damages.

23.    On May 31, 2016, ASI made a written demand on the Cullman Utilities Board for arbitration of claims by ASI, arising both pre-flood and post-flood, all of which implicated alleged decisions, determinations, actions, omissions, and design documents of or by CH2M. Some of the pre-flood claims had been the subject of prior arbitration demands by ASI. The post-flood claims included claims and alleged damages for alleged added costs that ASI attributed to the Excessive Leakage and claims based on ASI's assertions about "inherent limitations of [CH2M's] design" inhibiting ASI's post-flood work and causing failures of dam components and about failures by CH2M to provide required technical direction and to timely perform required contract administration functions. ASI also made a demand on the Cullman Utilities Board for arbitration of a claim by ASI that CH2M was wrongfully refusing to determine and certify that ASI had achieved Substantial Completion of ASI's work under the ASI Construction Contract.   Collectively, all of these claims for which ASI has demanded arbitration are referred to in this Complaint as the "ASI Arbitration Claims."

24.    In connection with the ASI Arbitration Claims, ASI produced an expert report dated September 15, 2015, opining, *inter alia*:

{B0976344.1}                                          13

2.

\* \* \*

• CH2M Hill failed to provide a well–designed CBMPP [Construction Best Management Practices Plan] and to define the E&S [Erosion & Sedimentation] controls.

\* \* \*

7. ... Again as stated above, CH2M Hill failed to design a proper and complete CMBPP and associated E&S controls.

8. The design and implementation of and payment for dam and borrow area E&S controls was disrupted from the start of the project when CH2M Hill initially denied its responsibility for design of the E&S controls and then initiated an exchange of adversarial correspondence with ASI over the matter.... The project history shows that ASI's assignment of resources, including personnel, equipment and materials, required to install E&S controls was disrupted by CH2M Hill's failure to (1) provide a complete CMBPP and a design of the associated E&S controls at the bidding stage of the Project, (2) adequately fund the allowance under Item 6.04 in the bidding documents, and (3) adequately revise the CBMPP as necessary.

9. ... CH2M Hill's failure to follow its own procedures, which are clearly identified in the CBMPP, is the primary reason for the dispute over design, installation, and payment of E&S controls for the project.

25.    In connection with arbitration of the ASI Arbitration Claims, ASI also

produced another expert report on October 28, 2016, stating, *inter alia*:

**Summary of Professional Opinions**

1. The excessive seepage/leakage occurring at the Duck River Dam is due to design defects that fail to meet professional industry standards.

26.    At ASI's request, in July and September of 2016, CH2M inspected

ASI's work under the ASI Construction Contract for the purpose of determining

whether ASI had achieved Substantial Completion. On both occasions, CH2M

{B0976344.1}                                    14

determined that ASI had not achieved Substantial Completion, and notified ASI in writing of the bases for CH2M's determinations that ASI had not achieved Substantial Completion. CH2M also provided to ASI written lists identifying specific elements and items of ASI's work that require completion or correction.

27.    In a November 8, 2016, letter to ASI concerning Substantial Completion, CH2M stated, *inter alia*:

> As of November 8, 2016, CH2M has the following concerns with the work:
>
> - The electrical conduits and lights are not fully installed in the Gallery.
>
> - Despite the installation of the permanent piping pursuant to WCD #11, there are still excessive leaks spraying into the Gallery in the stairwell, in the right side of the Gallery and through the monolith joints.  This leaking as described in CH2M's letter to Cullman Utilities dated June 21, 2016 is a defect attributed in CH2M's opinion to ASI's means and methods and workmanship.
>
> - The additional leakage spraying into the Gallery needs to be stemmed for the Gallery to drain effectively.
>
> - CH2M also remains concerned about elevated levels of Hydrogen Sulfide in the Gallery and particulate matter flowing through the drains.   The exact source of the Hydrogen Sulfide and particulates could not be determined at the September 29, 2016 inspection.   CH2M is investigating the potential causes of the elevated levels of Hydrogen Sulfide and particulate matter.  Until the source of the Hydrogen Sulfide and particulate matter can be determined and the problem addressed, CH2M cannot certify the project is substantially complete.
>
> It is CH2M's opinion is [*sic*] that ASI has not achieved substantial completion for the original project work at this time.

28. A November 9, 2016, letter from CH2M's counsel concerning

Substantial Completion similarly states, *inter alia*:

> On September 30, 2016, CH2M performed its Substantial Completion Inspection (seven days after receiving ASI's Second Request for Substantial Completion – five business days). The inspection of ASI's work revealed the project was still not substantially complete. Installation of the electrical systems that had been cited in the previous July 18, 2016 Response were still not completed. The greater than anticipated leakage into the dam gallery continues and ASI has taken no steps to remediate its construction defects. Additionally, CH2M has previously opined that that greater than anticipated leakage into the dam gallery is a result of ASI's construction defects, and CH2M has further recommended a monitoring period due to the greater than anticipated leaking.
>
> On November 8, 2016, CH2M provided its response to ASI's Request for Substantial Completion outlining the items it believed prevented the Certificate of Substantial Completion being issued. Among the items listed were the ongoing installation of electrical items, continued leaks into the dam gallery during the monitoring period and concerns over the existence of Hydrogen Sulfide and particulates.
>
> The more than anticipated leakage, presence of Hydrogen Sulfide, and particulate matter in the drains necessitate against a finding of substantial completion at this time.

29. Effective December 27, 2016, ASI and the Cullman Utilities Board

agreed in writing that the Cullman Utilities Board was deemed to have made, as of

December 27, 2016, a demand for arbitration of the Cullman Utilities Board's July

19, 2016, Notice of Claim (the "Cullman Utilities Board Arbitration Demand").

ASI and the Cullman Utilities Board subsequently agreed in writing to defer

commencement of the process for selection of arbitrators for the Cullman Utilities

Board Arbitration Demand until September 5, 2017.

DOCUMENT 2

30.    In connection with requests by ASI for advance partial releases of retainage and other funds, Western Surety executed and delivered to the Cullman Utilities Board detailed written Consents Of Surety dated April 4, 2016; August 1, 2016; and December 28, 2016. In all three, Western Surety acknowledged being informed of the Excessive Leakage; being informed that CH2M had not certified that ASI had achieved Substantial Completion of its work; and being informed that CH2M had not recommended a partial release of retainage or payment of certain other advances requested by ASI. In the August 1, 2016, and December 28, 2016, Consents Of Surety, Western Surety also explicitly acknowledged being informed of the Cullman Utility Board's July 19, 2016, Notice of Claim against ASI.

31.    Following up on an unsuccessful mediation in December of 2016, ASI and the Cullman Utilities Board entered into a written Agreement For Corrective Work dated February 24, 2017 (the "Corrective Work Agreement") under the ASI Construction Contract for ASI to perform certain corrective work on the dam in an effort to remediate the Excessive Leakage (the "Corrective Work"). The Cullman Utilities Board had requested and encouraged CH2M to participate in the December 2016 mediation, but CH2M declined. The plans for the Corrective Work were developed and prepared by an Alabama-licensed professional engineer employed by ASI and by personnel of an ASI subsidiary called Engineering & Construction Innovations, Inc.

32.     In the Corrective Work Agreement, ASI explicitly admitted and

agreed that:

> "A.     The Excessive Leakage is a defective condition that requires
> remediation."

ASI also repeated in the Corrective Work Agreement, however, ASI's prior denial

that the Excessive Leakage was caused by defective construction and again recited

ASI's prior allegation that:

> "… a defective design and defective engineering services by the
> Engineer caused the Excessive Leakage."

33.     In the Corrective Work Agreement, ASI expressly acknowledged and

agreed that the Corrective Work was part of, and included in, ASI's "Work" (a

defined term) under the ASI Construction Contract:

> "Corrective Work" means and includes the services, work, labor,
> material, facilities, equipment, testing, measurements, and
> documentation required to properly perform and implement the
> Grouting Plan…. **The Corrective Work is included in, and is a
> part of, the "Work" under the DRII Contract [the ASI
> Construction Contract].** (Emphasis Added)

34.     Although ASI continued to allege that the Excessive Leakage was

caused by deficient design by CH2M, and deficient construction phase services by

CH2M, rather than deficient construction, ASI also acknowledged and agreed that:

> C.     Notwithstanding the existing disputes concerning the cause or
> causes of the Excessive Leakage, and without admitting any
> responsibility for the Excessive Leakage, ASI has agreed to
> perform the Corrective Work pursuant to Paragraph 13.06 of
> the DRII Contract [the ASI Construction Contract], subject to
> and in accordance with the terms of the Corrective Work
> Agreement, …

The referenced Paragraph 13.06 of the ASI Construction Contract provides for "Correction Or Removal Of Defective Work."

35. In the Corrective Work Agreement, ASI further specifically agreed:

1.02    Except to the extent expressly provided otherwise in this Corrective Work Agreement, all terms of the DRII Contract [the ASI Construction Contract] apply to the Corrective Work and to ASI's performance of the Corrective Work.

36. The Corrective Work Agreement, and the obligations of ASI to perform the Corrective Work, expressly became part of the ASI Construction Contract, and are therefore covered by Western Surety's performance bond issued to the Cullman Utilities Board. In the performance bond, Western Surety expressly waived any requirement for notice to Western Surety of any change to the ASI Construction Contract.

37. In the Corrective Work Agreement, the Cullman Utilities Board agreed to make provisional advances for one half of the actual direct costs of performing the Corrective Work, up to a maximum of $250,000. ASI agreed to pay the other half of those costs. Both parties reserved their respective rights to recover the amounts they paid from one another or from any other responsible party, including CH2M.

38. On or about March 10, 2017, ASI began mobilizing materials, equipment, and personnel at the Duck River Dam for the Corrective Work and

soon began attaching to the upstream face of the dam's concrete spillway a drilling

platform necessary for performance of the Corrective Work. Then on Friday,

March 31, 2017, ASI abruptly abandoned the Corrective Work, and has never

resumed performance of that work, despite repeated assurances that it would do so.

At the time ASI abandoned the Corrective Work, the drilling platform had been

installed across a substantial portion of the dam's concrete spillway.

39. On April 3, 2017, ASI informed the Cullman Utilities Board that ASI

had transferred all of its physical assets (e.g. equipment and facilities), "intellectual

property" (e.g. names), and personnel to another entity called ASI Construction,

LLC ("NewNameCo"). The following day, April 4, 2017, the Cullman Utilities

Board received a letter from ASI stating:

> ASI Constructors, Inc. ("ASI") hereby irrevocably and
> unconditionally assigns to Western Surety Company all rights, title,
> and interest that ASI has to receive payments on the above
> referenced contract [the ASI Construction Contract], including but not
> limited to, the entire contract balance, progress payments, retainage,
> **claims**, and other rights to payment which are due, or to become
> due to ASI in whole or in part. All future payments should be made
> payable to "Western Surety Company" and mailed to Western Surety
> Company...: (Emphasis Supplied)
>
> *   *   *
>
> ... This assignment cannot be modified or revoked, in any
> manner, without the express written consent or Western Surety
> Company or Continental Casualty Company.

The Cullman Utilities Board has offered and stands ready to pay to Western Surety

any remaining balance under the ASI Construction Contract if, as, and when, and

to the extent, payment of any such balance becomes due.

40.    The Cullman Utilities Board has been advised that ASI no longer has
any employees, equipment, or facilities, and no longer has access to any funds
other than through Western Surety.  On May 25, 2017, a representative of Western
Surety stated to the Cullman Utilities Board that Western Surety had been required
to pay millions of dollars for payment bond claims due to non-payment by ASI and
that, as far as Western Surety was concerned, "ASI no longer exists."   Based on
information currently available to the Cullman Utilities Board, including
statements by Western Surety's representative, a formal termination of ASI's right
to proceed under the ASI Construction Contract would be meaningless and futile at
this point. ASI appears to lack any means or ability to proceed under the ASI
Construction Contract independent of participation by Western Surety.

41.    As a result of ASI's assignment of its rights to Western Surety (as
confirmed in ASI's April 4, 2017, letter to the Cullman Utilities Board), any
provisional advance payments by the Cullman Utilities Board for the Corrective
Work would have to be paid to Western Surety rather than to ASI.  On or about
May 31, 2017, ASI advised the Cullman Utilities Board that ASI was unable to
perform the Corrective Work unless ASI received from others (*i.e.* Western Surety
and the Cullman Utilities Board) not only the half of ASI's costs that the Cullman
Utilities Board had agreed to provisionally advance, but also the half of ASI's
costs that ASI had agreed in the Corrective Work Agreement that ASI would pay.

ASI also told the Cullman Utilities Board that ASI could not or would not proceed with performance of the Corrective Work Agreement unless the Cullman Utilities Board released Western Surety from any responsibility or liability for the Corrective Work.

42.    On June 9, 2017, the Cullman Utilities Board wrote ASI and Western Surety advising them that the Cullman Utilities Board was considering declaring a Contractor Default under the performance bond and requesting a conference. The ASI performance failures being considered as Contractor Defaults under the performance bond included: (a) ASI's failure and apparent inability to perform the Corrective Work and to complete ASI's other obligations under the Corrective Work Agreement; (b) ASI's failure and apparent inability to finish and correct other incomplete, deficient, and defective elements of ASI's work that had been identified in writing to ASI by CH2M, including those identified to ASI by CH2M on March 13, 2017; (c) (based on CH2M's determinations that ASI has not yet achieved Substantial Completion), ASI's failure to achieve Substantial Completion within the time allowed by the ASI Construction Contract; and (d) ASI's premature termination of its ability to perform its continuing warranty obligations and obligations to correct defective work by voluntarily transferring all of its physical assets, facilities, and personnel to another entity and by assigning to Western Surety all "rights, title, and interest that ASI has to receive payments …,

{B0976344.1}                                         22

including, but not limited to, the entire contract balance, progress payments, retainage, claims, and other rights to payment which are due, or to become due to ASI...."

43. A conference among the Cullman Utilities Board, ASI, and Western Surety occurred on June 22, 2017. On June 26, 2017, counsel for Western Surety wrote the Cullman Utilities Board to state: (a) Western Surety's contention (not accepted by the Cullman Utilities Board) that the Corrective Work and Corrective Work Agreement are not part of the ASI Construction Contract, and therefore are not covered by Western Surety's performance bond, because "the work contemplated by the Corrective Work Agreement related to efforts to remedy the effects of the catastrophic flooding event of late December 2015, not the construction of the dam, ... is substantially and materially different from the work set forth in the Contract that Western Surety bonded, ... and constitutes a material departure and cardinal change ..."; and (b) "CH2M ... the engineer of record, has not approved the work contemplated by the Corrective Work Agreement and refuses to administer its performance."

44. On June 29, 2017, counsel for ASI wrote the Cullman Utilities Board to state ASI's contention (not accepted by the Cullman Utilities Board) that:

> Based upon the positions taken by Western Surety Company (the "Surety") in a recent letter from its counsel dated June 26, 2017, ASI cannot perform Work under the Corrective Work Agreement

> pursuant to Paragraph 13.06.B. In pertinent part, Paragraph 13.06.B
> states "Contractor shall take no action that would void or otherwise
> impair Owner's special warranty or guarantee, if any, on said Work."
> The Surety is taking the position, among others, that the
> Performance Bond on this Project will not cover any Work under the
> Corrective Work Agreement. This means an issue under Paragraph
> 13.06.B, and ASI will not take any action to void or otherwise impair
> the Owner's special warranty or guarantee.

45.     On June 22, 2017, ASI provided to the Cullman Utilities Board an annotated version of an itemized list of incomplete and deficient work provided by CH2M to ASI on March 13, 2017. With its annotations, ASI disputes its obligation to complete or correct a few of the listed items, but acknowledges responsibility for others. ASI nevertheless appears unable to complete any of the listed items (at least without participation by Western Surety) because ASI no longer has any employees, facilities, or equipment, and apparently has access to funding only through Western Surety.

46.     On July 6, 2017, ASI wrote the Cullman Utilities Board (*via* email) to state ASI's contention (not accepted by the Cullman Utilities Board) that ASI is not obligated to complete or correct any incomplete or deficient elements of its work until after CH2M has determined and certified that ASI has achieved Substantial Completion of ASI's work under the ASI Construction Contract, and ASI repeated and renewed that contention on July 24, 2017. Although CH2M has determined that ASI has not yet achieved Substantial Completion, ASI disputes that determination.

DOCUMENT 2

[B0976344.1]     24

47.    The defendants, through their actions and omissions and their breaches of and failures to fulfill their duties and obligations to the Cullman Utilities Board, have wrongfully placed the Cullman Utilities Board in the following position:

a.    The defendants have not delivered to the Cullman Utilities Board the dam and ancillary work that they agreed, undertook, and were paid to deliver.  The Cullman Utilities Board has paid CH2M over $8 million dollars to, *inter alia*, design the Duck River Dam and its ancillary work, to prepare the contract documents, to administer bidding, and to provide full-time on-site construction management and contract administration services during construction, including continuous inspections of ASI's work as it was being performed.   The amounts paid to CH2M substantially exceed the amounts projected by CH2M and the "Not To Exceed Amounts" agreed to by CH2M, and appear to have been substantially increased as a result of the acts, omissions, conduct, events, and circumstances set out above. The Cullman Utilities Board has paid ASI over $50 million dollars to construct the Duck River Dam and the related ancillary work. This amount includes a premium paid to Western Surety for the performance bond (along with a payment bond).  Nevertheless, the Duck River Dam continues to suffer from the Excessive Leakage, even though the Cullman Utilities Board also paid CH2M to design, and also paid ASI over

$370,000 to install, an extensive system of piping and valves to divert some of the Excessive Leakage. CH2M asserts that the Excessive Leakage results from deficient construction by ASI, even though the deficiencies CH2M references were produced while CH2M was being paid by the Cullman Utilities Board specifically to monitor and inspect ASI's work as it was being performed and even though CH2M had represented to the Cullman Utilities Board with CH2M's recommendations for payment to ASI that ASI's work conformed to the requirements of the ASI Construction Contract. ASI asserts that the Excessive Leakage results from a deficient design by CH2M and deficient construction phase services by CH2M. Western Surety asserts that correction of the Excessive Leakage would be a "cardinal change" to the ASI Construction Contract and would not be covered by Western Surety's performance bond. Apart from the Excessive Leakage, the Duck River Dam also suffers from other significant deficiencies, cannot be operated or used as intended, and continues to require extensive and expensive monitoring, investigation, and maintenance that exceeds any routine upkeep contemplated by CH2M's design documents and the ASI Construction Contract (prepared by CH2M). Because the Duck River Dam cannot be operated and used as intended, the reservoir itself cannot be used as intended.

DOCUMENT 2

b. Although ASI explicitly admitted in the Corrective Work Agreement that "[t]he Excessive Leakage is a defective condition that requires remediation" and explicitly agreed with the Cullman Utilities Board that the Corrective Work and the Corrective Work Agreement are a part of and are included in the ASI Construction Contract, and although Western Surety explicitly waived in its performance bond any requirement for notice of any changes to the ASI Construction Contract, Western Surety now contends that the Corrective Work and Corrective Work Agreement are not part of the ASI Construction Contract and are not covered by Western Surety's performance bond. For its part, ASI has rendered itself unable to perform the Corrective Work and Corrective Work Agreement without participation by Western Surety, and now asserts that because Western Surety contends that the Corrective Work and the Corrective Work Agreement are not part of the ASI Construction Contract and are not covered by Western Surety's performance bond, ASI is contractually prohibited from performing the Corrective Work.

c. At this time, ASI cannot or will not complete and correct the items of incomplete and deficient work that have been identified to ASI in writing, even those items for which ASI has acknowledged its responsibility. ASI blames, and seeks to excuse, its failure and refusal to complete and correct items of incomplete and deficient work on CH2M's determination not to certify

DOCUMENT 2

that ASI has achieved "Substantial Completion," although ASI apparently also lacks the resources required to complete or correct those items, at least without participation by Western Surety.

d. The Cullman Utilities Board is and has been confronted with the ASI Arbitration Claims, which implicate actions, omissions, conduct, determination, decisions, and design documents of or by CH2M. These include, but are not limited to: (1) claims for additional compensation related to Erosion and Sediment Controls; (2) claims for extra costs that ASI attributes to the Excessive Leakage; (3) claims based on ASI's assertions about "inherent limitations of [CH2M's] design" inhibiting ASI's post-flood work and causing failures of dam components; (4) claims about failures by CH2M to provide required "technical direction" and CH2M's failures to timely perform required contract administration functions; (5) claims that CH2M has wrongfully refused to determine and certify that ASI had achieved Substantial Completion of ASI's work under the ASI Construction Contract; and (6) claims for costs of correcting or repairing work (*e.g.*, damage at the Intake Tower) that ASI attributes to deficient design or deficient technical direction by CH2M

e. As a result of ASI's transfer of all of its physical assets, facilities, and personnel to NewNameCo, and ASI's irrevocable assignment to Western Surety of all of its rights to payment, including rights to payment on

claims, ASI has voluntarily rendered itself unable to perform its continuing obligations (*e.g.* warranty obligations and obligations to correct defective work) to the Cullman Utilities Board under the ASI Construction Contract, at least without participation by Western Surety. For its part, Western Surety has thus far declined to participate or to accept or acknowledge any obligation or responsibility to do anything.

f.    As a result of ASI's irrevocable assignment to Western Surety of all rights to payment in connection with the ASI Construction Contract— explicitly including "claims"—the ownership of, and the right to control, pursue, or settle arbitration or litigation of, the remaining ASI Arbitration Claims, have been made uncertain.

g.    As a result of ASI's transfer of all of its physical assets, facilities, and personnel to NewNameCo, and its irrevocable assignment to Western Surety of all of its rights to payment in connection with the ASI Construction Contract (explicitly including "claims"), it appears that ASI's financial ability to participate in the arbitration of claims, including the Cullman Utilities Board's claims against ASI, has been made unreasonably uncertain.

## Count One (CH2M - Breach Of Contract)

48.    Paragraphs 1 through 47 above are incorporated by reference.

49.     CH2M has breached its contract with the Cullman Utilities Board for services in connection with the Duck River Dam by, *inter alia*, failing to perform properly, competently, adequately, completely, and timely the design, engineering, construction management, contract administration, and inspection services that CH2M agreed and undertook to perform and for which CH2M has been paid to perform.

50.     As a direct and proximate result of CH2M's breaches of contract, the Cullman Utilities Board has suffered, and will continue to suffer, substantial losses, expenses, costs, and damages for which CH2M is liable to the Cullman Utilities Board.

51.     With respect to CH2M's contractual obligations and liabilities to the Cullman Utilities Board, all conditions precedent have been satisfied or excused.

### Count Two (CH2M - Negligence)

52.     Paragraphs 1 through 51 above are incorporated by reference.

53.     At the time CH2M agreed and undertook to perform its services, duties, and obligations to the Cullman Utilities Board in connection with the Duck River Dam, and at all times during CH2M's performance of those services, duties, and obligations, CH2M could and did foresee that a failure to perform those services, duties, and obligations with the due, appropriate, and required skill,

{B0976344.1}                                        30

diligence, and care would cause the Cullman Utilities Board to suffer substantial loss and damage. In addition, CH2M cultivated and established a relationship of trust and confidence with the Cullman Utilities Board, and knew that the Cullman Utilities Board relied upon CH2M to perform using CH2M's experience and expertise with the utmost care, diligence, honesty, and integrity and to advance and safeguard the interests and objectives of the Cullman Utilities Board. CH2M undertook and agreed to perform its services, duties, and obligations with the due, appropriate, and required skill, diligence, and care, with the utmost honesty and integrity, and to advance and safeguard the interests and objectives of the Cullman Utilities Board.

54.    CH2M owed to the Cullman Utilities Board legal duties to perform CH2M's services, duties, and obligations with the due, appropriate, and required skill, diligence, care, and honesty, and in a non-negligent manner.

55.    CH2M breached its legal duties to the Cullman Utilities Board to perform CH2M's services, duties, and obligations with the due, appropriate, and required skill, diligence, care, and honesty, and in a non-negligent manner.

56.    As a direct and proximate result of CH2M's breaches of, and failures to comply with, CH2M's legal duties to the Cullman Utilities Board, the Cullman Utilities Board has suffered, and will continue to suffer, substantial losses,

expenses, costs, and damages for which CH2M is liable to the Cullman Utilities Board.

### Count Three (ASI - Breach Of Contract/Equitable Relief)

57. Paragraphs 1 through 47 above are incorporated by reference.

58. ASI has materially and substantially breached and failed to perform its obligations to the Cullman Utilities Board under the ASI Construction Contract (including, but not limited to, the Corrective Work Agreement) and the performance bond, and has voluntarily rendered itself incapable of performing further and future obligations to the Cullman Utilities Board under the ASI Construction Contract.

59. As a direct and proximate result of ASI's breaches of contract, the Cullman Utilities Board has suffered, and will continue to suffer, substantial costs, expenses, and damages.

60. The Cullman Utilities Board has made a proper and timely demand for arbitration of certain claims against ASI (including those referenced in the Cullman Utilities Board's July 19, 2016, Notice of Claim). Other breaches of contract by ASI have subsequently occurred or been brought to the Cullman Utilities Board's attention. Although the Cullman Utilities Board has provided ASI with written notice of such breaches that complies with the Claims and

Dispute Resolution provisions of the ASI Construction Contract, under all of the circumstances presented, the Cullman Utilities Board seeks a determination by the Court as to whether and to what extent those Claims and Dispute Resolution provisions (including arbitration) apply or continue to apply.

61.    The Cullman Utilities Board offers to do equity, and stands ready to comply further with the Claims and Dispute Resolution provisions of the ASI Construction Contract (including arbitration) if, as, and to the extent the Court determines and declares that such provisions are and remain applicable.

62.    With respect to ASI's contractual obligations and liabilities to the Cullman Utilities Board, all conditions precedent have been satisfied or excused.

## Count Four (ASI - Negligence/Equitable Relief)

63.    Paragraphs 1 through 47 and 57 through 62 are incorporated by reference.

64.    At the time ASI agreed and undertook to perform its services, duties, work, and obligations to the Cullman Utilities Board in connection with the Duck River Dam, and at all times during ASI's performance of such services, duties, work, and obligations, ASI could and did foresee that a failure to perform such services, work, duties, and obligations with the due, appropriate, and required skill, diligence, and care would cause the Cullman Utilities Board to suffer substantial

loss and damage. ASI undertook and agreed to perform such services, work, duties, and obligations with the due, appropriate, and required skill, diligence, and care.

65. ASI owed to the Cullman Utilities Board a legal duty to perform such services, work, duties, and obligations with the due, appropriate, and required skill, diligence, and care, and in a non-negligent manner.

66. ASI negligently breached its legal duty to the Cullman Utilities Board to perform its services, work, duties, and obligations with the due, appropriate, and required skill, diligence, and care.

67. As a direct and proximate result of ASI's negligent breaches of its legal duty to the Cullman Utilities Board to perform ASI's services, work, duties, and obligations with the due, appropriate, and required skill, diligence, and care, the Cullman Utilities Board has suffered, and will continue to suffer, substantial losses, expenses, costs, and damages for which ASI is liable to the Cullman Utilities Board.

### Count Five (Western Surety - Breach of Contract/Equitable Relief)

68. Paragraphs 1 through 47 and 57 through 62 are incorporated by reference.

69.   Western Surety has anticipatorily repudiated and failed to perform its obligations under its performance bond.

70.   With respect to Western Surety's obligations and liabilities to Cullman Utilities Board under Western Surety's performance bond, all conditions precedent have been satisfied or excused, or attempts to further satisfy any conditions precedent would be futile and pointless, and are not legally required.

## Count Six (All Defendants - Declaratory Judgment)

71.   Paragraphs 1 through 70 above are incorporated by reference.

72.   Present, actual, and justiciable disputes, claims, and controversies now exist between and among the Cullman Utilities Board and the defendants.

73.   The Cullman Utilities Board seeks and is entitled to a judgment determining and declaring:

a.   the respective responsibilities and liabilities of CH2M, ASI, and Western Surety for the Excessive Leakage;

b.   CH2M's responsibility and liability to the Cullman Utilities Board for the ASI Arbitration Claims;

c.   whether and to what extent the Cullman Utilities Board is entitled to recoup or recover back from CH2M the fees, costs and expenses paid

DOCUMENT 2

by the Cullman Utilities Board to CH2M in connection with the Duck River Dam;

d. whether, and if so, when, ASI has achieved Substantial Completion under the ASI Construction Contract;

e. the liabilities of ASI and Western Surety for liquidated damages as a result of a failure by ASI to achieve Substantial Completion within the time required by the ASI Construction Contract;

f. the items of work under the ASI Construction Contract that ASI remains obligated to complete and correct and any conditions to ASI's obligations to complete and correct those items;

g. as between ASI and Western Surety, the extent of their respective ownership of, and rights to control, pursue, or settle, the remaining ASI Arbitration Claims;

h. that the Corrective Work Agreement and Corrective Work are part of the ASI Construction Contract and are covered by Western Surety's performance bond;

i. that ASI has rendered itself incapable of performing its obligations to the Cullman Utilities Board by voluntarily transferring all of its physical assets, facilities, and personnel to another entity and assigning to Western Surety all rights to receive future payments;

DOCUMENT 2

j.   which claims and disputes are or remain subject to arbitration, and whether, to what extent, and on what conditions the Cullman Utilities Board is obligated to proceed with arbitration of those claims;

k.   whether any conditions to Western Surety's obligations and liabilities to the Cullman Utilities Board under the performance bond remain to be satisfied, and if so, the nature and extent of those conditions, and the remaining requirements for satisfying or excusing those conditions; and

l.   the costs, expenses, and damages for which each of the defendants is liable to the Cullman Utilities Board.

## Relief Requested

Based on Paragraphs 1 through 73 above, the Cullman Utilities Board respectfully demands a judgment:

A.   In favor of the Cullman Utilities Board and against CH2M awarding all damages, costs, and expenses for which CH2M is shown by the evidence at trial to be liable to the Cullman Utilities Board;

B.   In favor of the Cullman Utilities Board and against ASI awarding all damages, costs, and expenses for which ASI is shown by the evidence at trial to be liable to the Cullman Utilities Board;

DOCUMENT 2

{B0976344.1}                                                        37

C.    In favor of the Cullman Utilities Board and against Western Surety awarding all damages, costs, and expenses for which Western Surety is shown by the evidence at trial to be liable to the Cullman Utilities Board;

D.    Declaring and determining whether ASI on the one hand, or Western Surety on the other, owns the remaining ASI Arbitration Claims and controls the prosecution of, and right to compromise and settle, the remaining ASI Arbitration Claims;

E.    Declaring and determining that the Corrective Work and the Corrective Work Agreement are part of the ASI Construction Contract and are within the scope of the performance bond issued by Western Surety and ASI to the Cullman Utilities Board;

F.    Declaring and determining that by divesting itself of all physical assets, facilities, and personnel, ASI has rendered itself incapable of performing its continuing obligations under the ASI Construction Contract, which constitutes a breach of and default on the ASI Construction Contract;

G.    Declaring and determining whether, and on what conditions, the claims within the Cullman Utilities Board Arbitration Demand are to be resolved by arbitration on the one hand, or by this Court on the other;

H.    Declaring and determining whether, and on what conditions, any of the Cullman Utilities Board's other claims against ASI are subject to arbitration;

DOCUMENT 2

I.      Declaring and determining that because ASI has rendered itself incapable of performing ASI's obligations under the ASI Construction Contract and has defaulted on the ASI Construction Contract, Western Surety now has a present obligation to the Cullman Utilities Board to cause ASI's obligations under the ASI Construction Contract to be performed and fulfilled and that Western Surety is liable to the Cullman Utilities Board for all damages, costs, and expenses resulting from ASI's failures to properly and timely perform the ASI Construction Contract;

J.      Awarding the additional declaratory relief identified in Count Six above; and

K.      Awarding such different and additional relief as the Court deems just.

/s/ R. Carlton Smyly
R. Carlton Smyly
SMY006 (ASB-9739-M40R)
rcs@cabaniss.com
One Of The Attorneys For Plaintiff

OF COUNSEL:
CABANISS, JOHNSTON, GARDNER,
    DUMAS & O'NEAL LLP
Park Place Tower
2001 Park Place North, Suite 700
Birmingham, Alabama 35203
(205) 716-5200

*/s/ Roy W. Williams, Jr.*

Roy W. Williams, Jr.
WIL00 9 (ASB-8655-I63R)
rwwilliamsjr@bellsouth.net
One Of The Attorneys For Plaintiff

OF COUNSEL:
JACKSON & WILLIAMS
416 First Avenue, S.E.
Cullman, Alabama  35055
(256) 739-2546

## PLAINTIFF REQUESTS SERVICE BY
## CERTIFIED MAIL ON DEFENDANTS AS FOLLOWS:

CH2M HILL Engineers, Inc.
c/o CT Corporation System, Registered Agent
2 North Jackson Street, Suite 605
Montgomery, Alabama  36104

ASI Constructors, Inc.
c/o Corporation Service Company, Inc., Registered Agent
641 South Lawrence Street
Montgomery, Alabama  36104

Western Surety Company
c/o CT Corporation System, Registered Agent
2 North Jackson Street, Suite 605
Montgomery, Alabama  36104

DOCUMENT 2